UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEE M. JOHNSON,

        Plaintiff,

v.                                         Case No. 3:22-cv-702-BJD-PDB

SGT. GARNER,

        Defendant.

_____

**<u>ORDER</u>**

**I. Status**

Plaintiff, Lee M. Johnson, a prisoner of the Florida penal system, is proceeding *pro se* on a Complaint for Violation of Civil Rights (Doc. 1) against one corrections officer, Sergeant Garner, for deliberate indifference. In denying Defendant Garner's motion to dismiss, the Court concluded Plaintiff stated a plausible claim based on the following allegations:

> Defendant Garner announced to over fifty inmates that Plaintiff was a "snitch" and a "child molester" and told one inmate in particular (Inmate Workman) to "take care of this snitching child molester for me." *See* Doc. 1 at 6. Three days later, Inmate Workman put a knife to Plaintiff's throat and forced him to "perform oral sex on him." *Id.* at 7.

*See* Order (Doc. 42) at 1. Defendant Garner now moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (Doc. 63), arguing there

is no evidence showing he was subjectively aware that his own actions put Plaintiff at substantial risk of serious harm, and he is entitled to qualified immunity. *See* Doc. 63 at 13, 16. In support of his Motion, Defendant Garner relies on the following, among other records: his own declaration (Doc. 63-4); Plaintiff's deposition transcript (Doc. 63-5); incident reports (Doc. 63-7); and duty rosters (Doc. 63-8). Plaintiff opposes the Motion (Doc. 69), with his own affidavit (Doc. 69-1).

## II. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of

demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. *Id.* Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Arguments & Conclusions

In his declaration, Defendant Garner avers that he has "never discussed an inmate's charges with any other inmate." *See* Doc. 63-4 ¶. He concedes—

and duty rosters show—that he worked on the day Plaintiff alleges he told Inmate Workman to "take care of [him]," but he was not working the day of the alleged assault. *See id.* ¶ 12. *See also* Doc. 63-8 at 1, 4. According to an incident report and Plaintiff's deposition testimony, Plaintiff reported the sexual assault to Captain Teems on May 3, 2022. *See* Doc. 63-7 at 1; Doc. 63-5 at 72. Captain Teems's incident report does not reference Plaintiff's allegations against Defendant Garner, but a May 16, 2022 incident report prepared by Captain Tomlin notes that Plaintiff reported Defendant Garner told all the inmates in his dorm that Plaintiff was a child molester, and Inmate Workman later sexually assaulted him, saying Defendant Garner told him (Workman) "to take care of [Plaintiff's] ass." *See* Doc. 63-7 at 1, 3. Other inmates in the dorm were interviewed but denied hearing Defendant Garner make any threats. *Id.* at 3–4.

At his deposition, Plaintiff described his dorm at the time as an open floor plan—a large room with bunks for about fifty inmates, all of whom were on protective management for one reason or another. *See* Doc. 63-5 at 27–28. *See also* Doc. 63-4 ¶ 6 (Defendant Garner's description of the dorm "an open floor plan, with bunk beds arranged throughout the room"). Inmate Workman slept in the bunk next to Plaintiff's. *See* Doc. 63-5 at 33–34. On April 28, 2022, Plaintiff asked Defendant Garner when he would allow the inmates in the

dorm to go to the canteen because he had not allowed them to do so for a couple days. *Id.* at 47. Defendant Garner allegedly dismissed Plaintiff's inquiry, so Plaintiff threatened to write a grievance. *Id.* at 48–49. According to Plaintiff, Defendant Garner was standing near his and Inmate Workman's bunks and said to Plaintiff, "[Y]ou're a child molester and you're a snitch," and then Garner told Inmate Workman to "take care of this child molester and this snitch for me." *Id.* at 49–50. Defendant Garner also allegedly said to Plaintiff, "[N]ow, see . . . how easy it is I [sic] take care of you." *Id.* at 51. Plaintiff further testified that, after the sexual assault, Inmate Workman told him that if he did not leave Defendant Garner alone, Workman would kill Plaintiff. *Id.* at 59. In his affidavit, Plaintiff repeats that Defendant Garner told Inmate Workman to "take care of this snitching child molester." *See* Doc. 69-1 at 3. He further swears that Inmate Workman told him, after the sexual assault, "[Sergeant] Garner gave me the green light to keep you in line." *Id.* at 4.

In his Motion, Defendant Garner argues that even if he told the entire dorm Plaintiff was a child molester and a snitch, Plaintiff's claim fails because other inmates in that dorm are child molesters and snitches. *See* Doc. 63 at 9–10. He claims that making such a comment is not enough to satisfy the subjective knowledge element of a deliberate indifference claim. *Id.* at 11–12. Defendant Garner wholly ignores Plaintiff's other allegations—that Defendant

5

Garner explicitly told Inmate Workman to "take care of [Plaintiff]," and Inmate Workman told Plaintiff he was sexually assaulting him because Defendant Garner "gave [him] the green light." *See* Doc. 69-1 at 4. As the Court previously concluded, Plaintiff's allegations, accepted as true, "permit the reasonable inference that Defendant Garner objectively and subjectively knew Inmate Workman would harm Plaintiff and failed to 'take any action to . . . mitigate[] or monitor that substantial risk of serious harm.'" *See* Order (Doc. 42) at 6 (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014)).

Upon review of the evidence, the parties dispute whether Defendant Garner directed Inmate Workman to harm Plaintiff because Plaintiff had requested certain privileges or threatened to write a grievance about Defendant Garner. Such a dispute is material. *See Anderson*, 477 U.S. at 248 ("[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). The parties tell conflicting stories, but the Court must accept Plaintiff's version of events as true. *See Haves*, 52 F.3d at 921 (explaining a district court considering a motion for summary judgment "must view all evidence and make all reasonable inferences" in the non-movant's favor). This is so because when two parties' stories conflict, neither of which is blatantly contradicted by

indisputable evidence, a district court may not make credibility determinations in favor of one party over the other. *See Sears v. Roberts*, 922 F.3d 1199, 1206, 1208–09 (11th Cir. 2019) (reversing the district court's entry of summary judgment in favor of the officer-defendants because the officers' documentary evidence, including disciplinary reports and affidavits, consisted of "various forms of their own testimony," which directly contradicted Plaintiff's sworn allegations).

Accepting as true that Defendant Garner told another inmate to "take care of [Plaintiff]," and then days later, that inmate sexually assaulted Plaintiff, Defendant Garner cannot establish as a matter of law that he was unaware that his own actions put Plaintiff at substantial risk of serious harm. Defendant Garner offers no indisputable evidence, such as video footage, that blatantly contradicts Plaintiff's account of the incident.[1] As such, the record presents "a classic swearing match, which is the stuff of which jury trials are made." *Id.* at 1208 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)).  Viewing the evidence in the light most favorable to Plaintiff, Defendant Garner fails to carry his burden on summary judgment and his Motion (Doc. 63) therefore is **DENIED**.

---

[1] Plaintiff reported that Inmate Workman hung sheets between their bunks "to block the cameras." *See* Doc. 63-7 at 1; Doc. 63-5 at 56–58.

This case is in a posture to proceed to settlement conference and, if settlement negotiations fail, to trial. The Court finds Plaintiff is entitled to the appointment of counsel to assist him. *See* 28 U.S.C. § 1915(e)(1); *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Thus, this case is **REFERRED** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff. The Court encourages the parties to attempt to settle the case privately in the meantime. If settlement negotiations are successful, the parties shall immediately notify the Court.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of June 2025.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Lee M. Johnson
Counsel of Record